UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x

FIC, L.P., individually, and on behalf of all others similarly situated,

      Plaintiff,

    - against -

BEAR STEARNS ASSET MANAGEMENT INC., *et al.*,

      Defendants,

    - and -

BEAR STEARNS HIGH-GRADE STRUCTURED CREDIT STRATEGIES ENHANCED LEVERAGE, L.P.,

      Nominal Defendant.
--------------------------------------------------------------- x

No. 07 Civ. 11633 (AKH)

# THE BEAR STEARNS DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS FIC'S AMENDED COMPLAINT

Table of Contents

Page

Table of Authorities ..................................................................................................................... ii

Preliminary Statement ................................................................................................................... 1

Argument ........................................................................................................................................ 2

I. PLAINTIFFS' FAILURE TO MAKE PRE-SUIT
   DEMAND BARS ITS DERIVATIVE CLAIMS ............................................................... 2

II. THE CLASS CLAIM FOR BREACH OF
    FIDUCIARY DUTY SHOULD BE DISMISSED ............................................................. 7

III. THE CLAIMS FOR AIDING AND ABETTING
     BREACH OF FIDUCIARY DUTY SHOULD BE DISMISSED .................................... 10

IV. THE BREACH OF CONTRACT CLAIM
    AGAINST BSAM SHOULD BE DISMISSED ............................................................... 12

Conclusion .................................................................................................................................... 14

Table of Authorities

**CASES**
Page

*Agostino v Hicks,*
  845 A.2d 1110 (Del. Ch. 2004) ..................................................................................................9

*Albert v. Alex. Brown Mgmt. Servs., Inc.,*
  No. Civ. A. 762-N, 2005 WL 2130607 (Del. Ch. Aug. 26, 2005) ........................................7, 9

*Anglo American Sec. Fund, L.P. v. S.R. Global Int'l Fund, L.P.,*
  829 A.2d 143 (Del. Ch. 2003) ................................................................................................8, 9

*Associated Imports, Inc. v. ASG Indus., Inc.,*
  Civ. A. No. 5953, 1984 WL 19833 (Del. Ch. June 20, 1984) ................................................12

*Blasband v. Rales,*
  971 F.2d 1034 (3d Cir. 1992) ................................................................................................5, 6

*Bruno v. Metropolitan Transp. Auth.,*
  544 F. Supp. 2d 393 (S.D.N.Y. 2008) ....................................................................................13

*Carlton Investments v. TLC Beatrice Int'l Holdings, Inc.,*
  Civ. A. No. 13950, 1995 WL 694397 (Del. Ch. Nov. 21, 1995) ............................................11

*In re Cencom Cable Income Partners, L.P.,*
  No. Civ. A. 14634, 2000 WL 130629 (Del. Ch. Jan. 27, 2000) ............................................8, 9

*Johnson v. Arthur Espey, Shearson, Hammill & Co.,*
  341 F. Supp. 764 (S.D.N.Y. 1972) .......................................................................................4 n.1

*Khanna v. McMinn,*
  C.A. No. 20545-NC, 2006 WL 1388744 (Del. Ch. May 9, 2006) ..........................................6

*Kolbeck v. LIT America, Inc.,*
  939 F. Supp. 240 (S.D.N.Y. 1996) .......................................................................................12 n.4

*Lewis v. Fites,*
  Civ. A. No. 12566, 1993 WL 47842 (Del. Ch. Feb. 19, 1993) ................................................5

*Litman v. Prudential-Bache Props., Inc.,*
  611 A.2d 12 (Del. Ch. 1992) ......................................................................................................8

*Malpiede v. Townson,*
  780 A.2d 1075 (Del. 2001) ........................................................................................................11

Table of Authorities (Cont'd)

Page

*Ray v. Deloitte & Touche, L.L.P.*,
  CVS 15862, 2006 WL 1064503 (N.C. Super. Ct. Apr. 21, 2006) ................................. 4 & n.1

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.*,
  687 F. Supp. 832 (S.D.N.Y. 1988) ..............................................................................13

*Tooley v. Donaldson, Lufkin & Jenrette*,
  845 A.2d 1031 (Del. 2004) ..........................................................................................8

*Weinberger v. Rio Grande Indus., Inc.*,
  519 A.2d 116 (Del. Ch. 1986) ....................................................................................11

*Yaw v. Talley*,
  Civ. A. No. 12882, 1994 WL 89019 (Del. Ch. Mar. 2, 1994) ......................................6

*Zurich Capital Mkts. Inc. v. Coglianese*,
  332 F. Supp. 2d 1087 (N.D. Ill. 2004) .....................................................................4, 5

**STATUTES & RULES**

6 Del. C. §17-803 .................................................................................................................4

Fed. R. Civ. P. 23.1 ........................................................................................................1, 3

Defendants Bear Stearns Asset Management Inc. ("BSAM"), The Bear Stearns Companies LLC (f/k/a The Bear Stearns Companies Inc.) ("BSC"), JPMorgan Securities Inc. (f/k/a Bear, Stearns & Co. Inc.) ("BS&Co.") (together, the "Bear Stearns Defendants") respectfully submit this Reply Memorandum of Law in support of their motion to dismiss FIC L.P.'s ("FIC") amended complaint in its entirety.

## Preliminary Statement

FIC's answering brief fails to salvage its fundamentally flawed pleading. This is, in essence, a derivative action improperly asserted against a partnership already in the hands of neutral liquidators perfectly capable of bringing any meritorious lawsuits themselves, onto which FIC has grafted a facially inadequate breach of contract claim. After numerous opportunities and several attempts to reconfigure its pleading, FIC has not managed to state a single valid claim.

*First*, the two claims that FIC expressly styles as derivative (Counts IV and V) must be dismissed because the amended complaint falls woefully short of meeting the stringent standards of Fed. R. Civ. P. 23.1 and Delaware law for pleading demand futility. FIC admits that it did not make a pre-suit demand and now effectively concedes that its futility allegations concern the wrong party. In an attempt to remedy these pleading defects, FIC contends that pre-suit demand is not required because the funds are in liquidation, an argument Delaware law rejects. Alternatively, it seeks leave to replead to add the demand futility allegations contained in Navigator's amended complaint, but these allegations, as shown in the Bear Stearns Defendants' moving and reply briefs in Navigator, are also fatally flawed. And even if they were not, the allegations concern different claims asserted against different defendants on behalf of different funds and thus do nothing to establish that the liquidators would be unable to act independently in assessing a litigation demand in *this* case.

*Second*, Count II, alleging breach of fiduciary duty by BSAM as a direct claim, is a garden variety mismanagement and self-dealing claim that must be brought derivatively and thus should be dismissed along with Counts IV and V. FIC argues to the contrary relying on a single inapposite case holding only that claims *challenging the liquidation process itself* may be asserted directly. The failure of Count II requires dismissal as well of Count III, alleging aiding and abetting of the same breach.

*Third*, Counts III and V should be dismissed on the additional ground that they fail to allege facts supporting the "knowing participation" element of an aiding and abetting claim. That element, distinct from the element of "substantial assistance," requires a showing that the defendant actually *knew* that the conduct it was supporting or aiding constituted a breach of fiduciary duty. The complaint contains no such allegations.

*Finally*, FIC's opposing brief only confirms the pleading defect in its one potentially non-derivative claim -- the breach of contract claim alleged in Count I. FIC cannot and does not dispute that its amended complaint fails to identify which contractual provisions were purportedly breached -- a necessary element of a valid contract claim under Delaware law. FIC's attempt to fill in the blanks through statements in its brief fails as a matter of law. Count I, like the rest of FIC's complaint, should be dismissed.

Because FIC has had several prior opportunities to remedy its pleading defects, the amended complaint should be dismissed with prejudice.

## Argument

I.  PLAINTIFF'S FAILURE TO MAKE PRE-SUIT
    DEMAND BARS ITS DERIVATIVE CLAIMS

As explained in the Bear Stearns Defendants' opening brief (at 21-32), this Court should dismiss FIC's derivative claims for failure to establish demand futility. FIC admittedly

- 2 -

did not make pre-suit demand, and its allegations concerning demand futility are irrelevant because they concern BSAM rather than Messrs. Heis and Milson, who became the liquidators of the Domestic EL Fund a month before FIC filed its complaint. In its opposing brief (at 16-24), FIC effectively concedes that the demand futility allegations in its amended complaint are addressed to the wrong fiduciary. Trying to remedy this fatal pleading defect, FIC conjures up two equally flawed arguments: (i) that the liquidators' power to bring suit supposedly is not exclusive and thus demand was not necessary, and (ii) that it should be allowed to amend its complaint to adopt the demand futility allegations asserted by Navigator in its own separate case.

FIC cites not a single case to support its baseless assertion that the liquidators' power to commence a suit is "not exclusive." Rule 23.1(b)(3)(A) makes clear that pre-suit demand must be made on the directors, or in this case the general partner, or a person with "comparable authority." Fed. R. Civ. P. 23.1(b)(3)(A) (complaint must "state with particularity any effort by the plaintiff to obtain the desired action from the directors or *comparable authority*" before commencing suit) (emphasis added). Here, only the liquidators have been awarded that comparable authority. Pursuant to Section 12.2 of the Limited Partnership Agreement for the Domestic EL Fund, "[i]n winding up the Partnership, the Liquidator shall possess full, complete and *exclusive* right, power and authority . . . to . . . prosecute and defend suits." Sheldon Decl., Exh. J, § 12.2 (emphasis added). As such, a "demand" upon BSAM would be irrelevant because when the complaint was filed BSAM no longer had authority to commence a suit on behalf of the Domestic EL Fund.

Contrary to FIC's assertion (FIC Br. at 17), Delaware law sanctions this exclusive grant of authority, by expressly authorizing the appointment of liquidators to "wind up the limited partnership's affairs" and empowering the persons so appointed to act "in the name of,

and for and on behalf of the limited partnership" to "prosecute and defend suits, whether civil, criminal or administrative" and to handle the disposition of all of the partnership's business and property. 6 Del. C. §§ 17-803(a)-(b). Nothing in the statute *prohibits* the partners from assigning the exclusive right to bring and defend suits.

The case law on point is in accord. For example, in *Ray v. Deloitte & Touche, L.L.P.*, No. 05 CVS 15862, 2006 WL 1064503 (N.C. Super. Ct. Apr. 21, 2006), the court dismissed a derivative claim brought on behalf of a defunct Delaware limited partnership because the plaintiff had failed to make a proper demand or show demand futility. In that case, the governing partnership agreements provided procedures for electing a substitute general partner or liquidator in the event of the bankruptcy of the original general partner. The court found that before bringing a derivative suit, the plaintiffs "were required by law to do as the Partnership Agreements contemplated, that is, have the limited partners decide who would manage the Funds (whether as going concerns or in liquidation) and then make demand on that new management." *Id.* at *6. *See also Zurich Capital Mkts. Inc. v. Coglianese*, 332 F. Supp. 2d 1087 (N.D. Ill. 2004) (finding that plaintiff failed to meet particularity requirements of Rule 23.1 where liquidators had been appointed).[1]

Recognizing that its pleading is facially deficient, FIC copies into its own brief the demand futility allegations set forth in the *Navigator* complaint and asks for leave to amend its complaint to assert the same allegations. (FIC Br. at 18-20). FIC argues that these

---

[1] Even where companies are defunct and there is no fiduciary in place with responsibility to consider a demand, courts require shareholders to exhaust intracorporate remedies prior to bringing a derivative action. *See Johnson v. Arthur Espey, Shearson, Hammill & Co.*, 341 F. Supp. 764, 767 (S.D.N.Y. 1972) ("[s]ince a demand upon directors is an impossibility, plaintiff must call a shareholders' meeting and there seek action against defendant before he will be permitted to institute suit") (citations omitted); *see generally Ray*, 2006 WL 1064503, at *7 (collecting cases showing that demand was not deemed futile merely because there was no one upon whom demand could be made and requiring shareholders to take action before filing suit).

allegations, which focus on the assertion that the liquidators have failed to investigate or initiate potential litigation, are sufficient to establish demand futility. But FIC's gambit fails for several independent reasons.

First, as shown in the Bear Stearns Defendants' moving brief (at 21-32), and in their reply brief in *Navigator* (at 5-8), Navigator itself fails to explain coherently why independent fiduciaries appointed after the events at issue would be unable to assess the potential validity of any litigation claims that their fund might possess, and it certainly does not set forth a particularized set of allegations that meet the stringent pleading requirements for demand futility. Specifically, allegations of delay or failure to investigate are insufficient to show a lack of independence. *See Lewis v. Fites*, Civ. A. No. 12566, 1993 WL 47842, at *3 (Del. Ch. Feb. 19, 1993) (allegation that directors were aware of alleged wrongs for *more than two years* but took no action was precisely the "sort offered as an excuse for failure to make demand [that] have been repeatedly rejected"); *see also, e.g., Blasband v. Rales*, 971 F.2d 1034 (3d Cir. 1992) (finding that board's failure to respond to letter requesting information was insufficient because board was not obligated to act pursuant to that letter and mere failure to take action does not show that board was disabled from taking action); *Zurich Capital Mkts. Inc.*, 332 F. Supp. 2d at 1115 (dismissing derivative claims under Rule 23.1 for failure to plead demand futility with particularity even though plaintiff alleged that "'after *two years* of fact discovery they have elected to pursue claims against'" only certain defendants) (emphasis added).

Equally unavailing is plaintiff's argument that the liquidators lack the discretion to refuse to pursue litigation and that any decision to do so necessarily means that they have abandoned their duties. (FIC Br. at 21-22). As explained in detail in the Bear Stearns Defendants' reply brief in *Navigator* (at 7-8), a liquidator's role is much broader than simply

pursuing litigation -- it must balance many competing interests and concerns and make a rational cost-benefit analysis as to whether and when to commence litigation. It is therefore nonsensical to suggest that a reasonable doubt as to the liquidators' independence exists simply because they have not commenced litigation in the last year.

Finally, even if the Court were satisfied that the allegations in *Navigator* suffice to show demand futility in *that* case (which it has not), those allegations do not demonstrate that demand by FIC would have been futile in *this* case. Under Delaware law, a plaintiff must "allege particularized facts demonstrating that directors were incapable of considering a proper demand." *Blasband*, 971 F.2d at 1051. To assert a proper demand, a party must (i) identify the alleged wrongdoers; (ii) describe the factual basis of the wrongful acts and the harm caused; and (iii) request remedial relief that the board or general partner should seek on the corporation's behalf. *See Yaw v. Talley*, Civ. A. No. 12882, 1994 WL 89019), at *7 (Del. Ch. Mar. 2, 1994); *see also Khanna v. McMinn*, C.A. No. 20545-NC, 2006 WL 1388744, at *13 (Del. Ch. May 9, 2006) (unpublished opinion).

Therefore, in its own action, Navigator must allege facts sufficient to show that the liquidators are incapable of considering a demand to assert claims for failure to supervise against the four Director Defendants of the HG Master Fund. To that end, the allegations contained in Navigator's complaint all concern the "Partnership," which is defined in that complaint as "Bear Stearns High-Grade Structured Credit Strategies, L.P." -- the Domestic HG Fund. In contrast, in *this* action, FIC must allege facts that show that the liquidators are incapable of considering a demand to assert claims for breach of fiduciary duty and breach of contract against BSAM and aiding and abetting claims against the other Bear entities in connection with a *different* fund, the EL Master Fund. The claims that the liquidators would

have to evaluate in Navigator thus involve different parties, different theories, and different funds than the claims they would have to evaluate in FIC. It cannot be assumed that Navigator's assertions of bias and interest on the part of the liquidators -- even assuming arguendo that the allegations are not facially insufficient -- have any relevance whatsoever to FIC's asserted claims. Since Navigator's allegations cannot create a reasonable doubt as to the disinterestedness or independence of either Mr. Heis or Mr. Milson in *this* case, and FIC has not asserted any other facts to show demand futility, Counts IV and V (asserting derivative claims) should be dismissed and FIC's request for leave to amend should be denied.[2]

## II. THE CLASS CLAIM FOR BREACH OF FIDUCIARY DUTY SHOULD BE DISMISSED

A claim for breach of fiduciary duty based on allegations of mismanagement and self-dealing, as opposed to concealment and nondisclosure, is derivative in nature, and thus FIC's Count II should be dismissed along with its other derivative claims. (Bear Stearns Defendants ("BSD") Moving Br. at 40). In *Albert v. Alex. Brown Mgmt. Servs., Inc.*, No. Civ. A. 762-N, 2005 WL 2130607 (Del. Ch. Aug. 26, 2005), on which FIC itself relies, the court explained that "[g]enerally, non-disclosure claims are direct claims," whereas "a claim for mismanagement" is "a paradigmatic derivative claim." *Id.* at *12-13. Self-dealing claims are

---

[2] FIC originally filed this action on December 21, 2007. After BSAM pointed out deficiencies in that complaint, FIC voluntarily withdrew it. On December 28, 2007, FIC filed its second complaint, this time marking the case as related to Navigator. In or about April 2008, after additional conversations with the Bear Stearns Defendants' counsel concerning the complaint, FIC requested that the Bear Stearns Defendants stipulate to provide time for an amendment, which they did. In or about May 2008, while FIC was in the process of drafting its amendment, the Bear Stearns defendants submitted a pre-motion letter in *Navigator*, the case FIC previously deemed related to it, explaining to Justice Gammerman the pleading defects warranting dismissal, which included the failure to make pre-suit demand. In June 2008, FIC filed its third complaint, failing to remedy the pleading defects, including demand futility, of which it was already aware. FIC should not get a fourth chance to do so.

treated the same as mismanagement claims under *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004). (BSD Moving Br. at 40).

FIC does not deny -- indeed its own cases confirm -- that "[t]he test for distinguishing direct from derivative claims" is "substantially the same" in the partnership and corporation contexts. *See Anglo American Sec. Fund, L.P. v. S.R. Global Int'l Fund, L.P.*, 829 A.2d 143, 149 (Del. Ch. 2003). Unable to dispute that principle, FIC instead contends that "[t]he direct/derivative analysis for a hedge fund in dissolution is different from that involving an ongoing corporation" (FIC Br. at 10) and that as a result its mismanagement and self-dealing allegations here state a direct claim.

FIC's argument hinges on a misreading of *In re Cencom Cable Income Partners, L.P.*, No. Civ. A. 14634, 2000 WL 130629 (Del. Ch. Jan. 27, 2000), which held that a breach of fiduciary duty claim by limited partners *relating to the liquidation of the partnership* was a direct claim. But *Cencom* does not, as FIC contends, support the broader proposition that the direct/derivative distinction is discarded altogether once a partnership is in liquidation, nor are its facts "strikingly similar to those at bar." (FIC Br. at 14).

In *Cencom*, the plaintiffs challenged the way in which the general partner was carrying out the dissolution of the partnership, and sought to enjoin the liquidation sale of the partnership's assets. 2000 WL 130629, at *1, 3-4. The limited partners did not allege that the general partner had mismanaged the partnership, engaged in self-dealing, or breached any other duties to the limited partners during the life of the partnership, as is alleged here and as was alleged in *Litman v. Prudential-Bache Props., Inc.*, 611 A.2d 12, 15 (Del. Ch. 1992), which applied the usual direct/derivative distinction in the partnership context. The outcome in *Cencom* turned on the fact that it was a "dispute over the liquidation" itself, and the court

expressly so limited its holding, stating that "a claim brought *in that context* is direct." 2000 WL 130629, at *1 (emphasis added). Courts have subsequently explained that *Cencom* turned on "special circumstances" not present here, *see Anglo Am. Sec. Fund., L.P.,* 829 A.2d at 151, and "is limited to its own unique set of facts," *see Agostino v Hicks,* 845 A.2d 1110, 1125 (Del. Ch. 2004).

There are no such "special circumstances here," as FIC's claims have nothing to do with the liquidation itself and everything to do with how defendants managed the partnership *prior* to liquidation. *Cencom* is therefore inapplicable, and there is no basis for departing from the general approach to distinguishing direct from derivative claims.

In a final effort to save its claim, FIC also contends that Count II is based on nondisclosure rather than mismanagement and self-dealing, and thus states a direct claim under *Anglo* and *Alex. Brown.* (FIC Br. at 15-16). But the gravamen of the complaint is that BSAM mismanaged the partnership and engaged in self-dealing transactions. The complaint alleges, for example:

- that BSAM and the Management Defendants "ran the High-Grade Enhanced Fund for their own benefit and the benefit of their corporate parent, BSC" (AC ¶ 6);

- that defendants "took steps to prevent any independent review of the related party transactions" (AC ¶ 8);

- that "Defendants' self-dealing caused the High-Grade Enhanced Fund to undertake unwarranted and undisclosed risk" (AC ¶ 11);

- that BSAM suffered from an "inherent conflict of interest" in valuing the Master Fund's assets (AC ¶ 65);

- that BSAM "caused the Master Fund" to purchase illiquid CDOs and "extremely risky" CDO-squared offerings that defendants themselves had issued and "that no independent third party would purchase" at prices that were not negotiated at arms-length (AC ¶¶ 78-80);

- that BSAM had in place, but did not follow, "procedures to prevent mismanagement through self dealing" (AC ¶ 83);

-9-

- that BSAM intentionally inflated the value of the Master Fund's assets "to (1) increase its fees and (2) hide the fact that it overpaid for assets in self dealing transactions with other BSC entities" (AC ¶ 86); and

- that defendants' alleged "mismanagement and self-dealing manifested itself in a direct loss for investors" (AC ¶ 99).

*See also* AC ¶¶ 7, 9, 12, 77, 87, 104 (all similarly alleging claims of mismanagement).

Looking at the allegations of the complaint, it would be difficult (if not impossible) to characterize FIC's claim for breach of fiduciary duty as something other than a mismanagement and self-dealing claim.[3] And unlike the plaintiffs in *Navigator* and *Varga*, FIC did not assert a separate fraud claim.

Because *Cencom* is inapplicable, and because this claim rests on allegations overwhelmingly focused on mismanagement and self-dealing, FIC's breach of fiduciary claim must be brought derivatively, and Count II should be dismissed for the reasons explained in Point I, above.

## III. THE CLAIMS FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY SHOULD BE DISMISSED

FIC asserts both class and derivative claims against the non-Management Defendants for aiding and abetting BSAM's alleged breaches of fiduciary duty. (Counts III and V). As discussed above, the derivative claim fails on demand futility grounds (Point I), and there is no dispute that both claims fail if the breach of fiduciary duty claim against BSAM is dismissed. These claims also fail because -- contrary to FIC's contention -- the complaint does not properly allege that BSC or BS&Co. "knowingly participated" in the alleged breaches of duty by BSAM.

---

[3] To the extent any allegations are construed as relating to nondisclosure (which they should not be), they fail to meet any of the particularity requirements for pleading a breach of fiduciary duty claim based on nondisclosure.

In its opposition brief, FIC blends the two elements of this claim into one, arguing that a defendant "knowingly participates" by providing "substantial assistance" to the primary violator. (FIC Br. at 24-25). But "substantial assistance" and "knowing participation" are two separate and distinct elements, and both must be pled to state an aiding and abetting claim. Whether or not FIC has alleged "substantial assistance" is beside the point because it has not alleged -- and does not claim to have alleged -- "knowing participation," as this element has been construed by Delaware and New York courts.

"Knowing participation" in a fiduciary's breach means that the alleged aider and abettor acted "with the knowledge that the conduct advocated or assisted constitutes such a breach." *Malpiede v. Townson*, 780 A.2d 1075, 1097 (Del. 2001). The case law is clear that knowledge literally means "actual knowledge." It is not enough to allege that a defendant could have, would have, or should have discovered the alleged wrongdoing. *Id.*

As the Bear Stearns Defendants explain at greater length in their reply brief in the *Navigator* case, Delaware courts have repeatedly likened aiding and abetting to civil conspiracy, requiring an allegation of conscious complicity between the third party and the alleged primary wrongdoer. (BSD Reply Br. in *Navigator* at Point IV; BSD Reply Br. in *Varga* at Point IV). *See Weinberger v. Rio Grande Indus., Inc.*, 519 A.2d 116, 131 (Del. Ch. 1986) ("A claim for civil conspiracy (sometimes called 'aiding and abetting') requires . . . a knowing participation in [the] breach by the defendants who are not fiduciaries"); *see also, e.g., Carlton Investments v. TLC Beatrice Int'l Holdings, Inc.*, Civ. A. No. 13950, 1995 WL 694397, at *15 & n.11 (Del. Ch. Nov. 21, 1995) (aiding and abetting claims, like civil conspiracy claims, "largely come down to what constitutes 'knowing participation,'" and "primarily focus on the understanding of the parties with respect to their complicity in any scheme to defraud or in any breach of fiduciary duties");

*Associated Imports, Inc. v. ASG Indus., Inc.*, Civ. A. No. 5953, 1984 WL 19833 (Del. Ch. June 20, 1984), at *12 (noting in post-trial decision that "knowledge and intentional complicity" in underlying breach "are essential" to aiding and abetting claim).[4]

Therefore, to state a claim for relief, FIC had to allege that the non-Management Defendants actually knew that the Management Defendants were breaching fiduciary duties to investors by engaging in the conduct described in Counts II and IV. In other words, FIC had to allege that these defendants *actually knew* -- not just that they should have known -- that the Management Defendants "willfully concealed the true value of the Master Fund and the actual performance of the Master Fund" (FIC AC ¶ 132); were "withdrawing their assets from the Partnership while falsely assuring investors that the Funds would weather the sub-prime credit meltdown" (*id.* ¶ 133); and were mismanaging the affairs of the Partnership through "fraudulent self-dealing" (*id.* ¶ 146). But the complaint is completely bereft of *any* allegations that *anyone* at BSC or BS&Co. knew that any of the Management Defendants were doing any of these things.

Because FIC has failed to allege actual knowledge, as the governing cases strictly require, Counts III and V should be dismissed for failure to state a claim.

## IV. THE BREACH OF CONTRACT CLAIM AGAINST BSAM SHOULD BE DISMISSED

Contrary to what FIC says in its brief, the Bear Stearns Defendants moved to dismiss the contract claim asserted in Count I not only because the complaint did not identify the contract at issue, but *also* because it failed to identify which specific contractual provisions

---

[4] New York law is no different. As then Judge Mukasey explained in *Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996), "courts in this district applying New York law have held that actual knowledge is necessary to impose liability for participating in a breach of fiduciary duty." In *Kolbeck*, Judge Mukasey dismissed the aiding and abetting claim at the pleading stage, and denied plaintiff's motion to amend, because "plaintiffs have failed to set forth facts showing that defendants knew [the alleged primary wrongdoer] was stealing plaintiffs' money."

BSAM allegedly breached, as Delaware law requires. (BSD Moving Br. at 56-57). In its opposition brief, FIC now identifies a handful of provisions in the LPA that it claims were breached. But the fact remains that these provisions are not cited in the complaint, and as a matter of law plaintiffs cannot overcome pleading defects by referencing new and additional facts in their opposition brief. *E.g., Bruno v. Metropolitan Transp. Auth.*, 544 F. Supp. 2d 393, 396 (S.D.N.Y. 2008) ("Although Bruno attempts to remedy the Complaint's shortcomings in his Opposition Memorandum . . . , such new allegations will not be considered by the Court."); *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F. Supp. 832, 836 (S.D.N.Y. 1988) ("A claim for relief 'may not be amended by the briefs in opposition to a motion to dismiss.'") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

Here, the requirement to identify the particular provisions that have been breached is no mere technicality. As explained in the reply brief in *Varga,* the governing contracts grant BSAM broad discretion to select the asset composition and to manage the funds. (BSD Reply Br. in *Varga* at Point VI; Sheldon Decl. Exh. J § 3.1). In light of that contractual grant of discretion, plaintiff faces an uphill battle on its breach of contract theory, and defendants are entitled -- at minimum -- to a pleading that informs them of which provisions they are alleged to have breached and why.

Finally, having strenuously resisted consolidation, FIC should not be permitted to remedy its plain pleading failure simply by pointing to the recitation of contract provisions included in the later-filed and more detailed amended complaint in *Navigator.* The viability of FIC's claims should be measured solely by the allegations in its own complaint.

FIC's failure to plead an essential element of a breach of contract claim warrants dismissal of Count I under settled Delaware law. Because FIC has been afforded prior

opportunities to cure its pleading defects, the contract claim against BSAM should be dismissed with prejudice.

## Conclusion

For the reasons set forth herein and in their moving brief, the Bear Stearns Defendants respectfully request that this Court dismiss the *FIC* amended complaint in its entirety as to all of the Bear Stearns Defendants.

Dated:   New York, New York
         December 19, 2008

                                              Kramer Levin Naftalis & Frankel LLP

                                              By:  /s/ Barry H. Berke
                                                    Barry H. Berke
                                                    Stephen M. Sinaiko
                                                    Kerri Ann Law
                                                    Marjorie E. Sheldon

                                            1177 Avenue of the Americas
                                            New York, New York 10036
                                            (212) 715-9100

                                            Attorneys for the Bear Stearns Defendants

KL3 2693846.1