UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| FIC, L.P., individually, and on behalf of itself and all others similarly situated, : | |
| : | No. 07-CV-11633 (AKH) |
| Plaintiff, : | |
| : | ECF Case |
| v. : | |
| : | |
| BEAR STEARNS ASSET MANAGEMENT, INC., : | Jury Trial Demanded |
| RALPH CIOFFI, RAYMOND McGARRIGAL, : | |
| MATTHEW TANNIN, THE BEAR STEARNS : | |
| COMPANIES INC., BEAR STEARNS & CO. INC., : | |
| WALKERS FUND SERVICES LIMITED, SCOTT : | |
| LENNON, and MICHELLE WILSON-CLARKE, : | |
| : | |
| Defendants, : | |
| : | |
| and : | |
| : | |
| BEAR STEARNS HIGH-GRADE STRUCTURED : | |
| CREDIT STRATEGIES ENHANCED LEVERAGE FUND, : | |
| L.P., : | |
| : | |
| Nominal Defendant. : | |
| : | |
| : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT MATTHEW TANNIN'S ANSWER TO**
**PLAINTIFF'S SECOND AMENDED VERIFIED DERIVATIVE COMPLAINT**

Defendant Matthew M. Tannin ("Tannin"), through his counsel Brune & Richard LLP,

hereby answers the Second Amended Verified Derivative Complaint (the "Second Amended

Complaint") of Plaintiff FIC, L.P. ("Plaintiff" or "FIC").

**GENERAL DENIAL**

Pursuant to Fed. R. Civ. P. 8(b), except as specifically identified below, Mr. Tannin

generally denies each and every allegation in the Second Amended Complaint, including any and

all allegations that he has engaged in any wrongful conduct, and he denies that he has any liability in this matter.

Mr. Tannin acted with honesty, integrity and in good faith, and he specifically denies any allegation to the contrary.  As will be proved at trial, the collapse of the Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage Fund (the "EL Fund" or the "Partnership") was not caused by anything Mr. Tannin supposedly did or did not do, but instead by a tremendous dislocation in and collapse of the global credit markets.

Where the allegations in the Second Amended Complaint are not directed at Mr. Tannin, no response is required and no response has been provided below.  Any lack of response should not be construed as an admission by Mr. Tannin that the facts alleged or the characterizations asserted in those paragraphs are accurate.

## SPECIFIC RESPONSES TO INDIVIDUAL ALLEGATIONS

1.      Deny the allegations contained in paragraph 1, except admit that FIC purports to assert claims derivatively on behalf of the EL Fund.

2.      Deny the allegations contained in paragraph 2, except admit that the Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage Master Fund (the "EL Master Fund") filed for bankruptcy protection in the Cayman Islands on or about July 31, 2007, that the EL Master Fund was incorporated in the Cayman Islands, and that the assets of the EL Fund were invested in the EL Master Fund.

3.      Deny the allegations contained in paragraph 3, except admit that (i) the EL Fund was formed in or around the summer of 2006, (ii) BSAM solicited existing investors in the Bear Stearns High-Grade Structured Credit Strategies, L.P. (the "HG Fund") as well as new investors to invest in the EL Fund, (iii) the HG Fund and the EL Fund were feeder funds that invested assets into master funds, and (iv) there were two overseas feeder funds – the Bear Stearns High

Grade Structured Credit Strategies (Overseas) Ltd. ("the HG Overseas Fund") and the Bear

Stearns High-Grade Structured Credit Strategies Enhanced Leverage (Overseas) Ltd. (the "EL

Overseas Fund").

      4.      Deny the allegations contained in paragraph 4.

      5.      Deny the allegations contained in paragraph 5, state that to the extent this

paragraph purports to assert legal assertions, no response is required, and refer to the Bear

Stearns High-Grade Structured Credit Strategies Enhanced Leverage Fund, L.P. Amended and

Restated Limited Partnership Agreement, dated as of July 31, 2006 (the "LPA") for its complete

terms and contents.

      6.      Deny the allegations contained in paragraph 6.

      7.      Deny the allegations contained in paragraph 7.

      8.      Deny the allegations contained in paragraph 8.

      9.      Deny the allegations contained in paragraph 9.

      10.      Deny the allegations contained in paragraph 10.

      11.      Deny the allegations contained in paragraph 11.

      12.      Deny the allegations contained in paragraph 12.

      13.      Deny the allegations contained in paragraph 13, except refer to the Administrative

Complaint in *In the Matter of Bear Stearns Asset Management, Inc.*, Dkt. No. E-2007-0064

(Mass.) (the "Massachusetts Complaint") for a statement of its allegations.

      14.      Deny the allegations contained in paragraph 14, except refer to the complaint filed

in *Barclays Bank PLC* v. *Bear Stearns Asset Management Inc. et al.*, No. 07 Civ. 11400 (LAP)

(S.D.N.Y.) (the "Barclays Complaint") for a statement of its allegations and parties, and further

state that this action has been dismissed with prejudice.

15.     Deny the allegations contained in paragraph 15, refer to the Second Amended Complaint filed in *Varga v. Bear Stearns Asset Management Inc., et al.*, No. 08 Civ. 03397 (AKH) (S.D.N.Y.) for a statement of its allegations, and further state that two prior complaints, a Notice of Dismissal, and Answers by each of the defendants to the Second Amended Complaint have been filed in the Varga action and refer to those documents for a statement of their allegations and/or terms.

16.     Deny the allegations contained in paragraph 16, except admit (i) that articles appeared in the *Wall Street Journal*, *Bloomberg* and *BusinessWeek* concerning the Funds but otherwise deny the allegations concerning these publications, (ii) that Mr. Cioffi and Mr. Tannin were indicted by a federal grand jury, and (iii) that the SEC filed a civil complaint against Mr. Cioffi and Mr. Tannin on or about June 19, 2008, and refer to the Indictment and the SEC Complaint for a statement of their allegations, and further state that on November 10, 2009, following a fifteen-day trial on the criminal charges, Mr. Cioffi and Mr. Tannin were acquitted of all charges submitted to the jury in *United States v. Cioffi and Tannin*, No. CR-08-415.

17.     Deny the allegations contained in paragraph 17, except admit that the referenced article was published in the *Wall Street Journal*.

18.     The allegations contained in paragraph 18 constitute legal assertions as to which no response is required.

19.     The allegations contained in paragraph 19 constitute legal assertions as to which no response is required.

20.     Deny knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 20.

21.     Deny the allegations contained in paragraph 21, except admit that (i) BSAM was at all relevant times a corporation organized under the laws of the State of New York and at times had its principal office located at 383 Madison Avenue, New York, New York; (ii) BSAM was the General Partner of the EL Fund; and (iii) BSAM was the Investment Manager of the EL Fund.

22.     Deny the allegations contained in paragraph 22, except admit that (i) BS&Co. was a corporation organized under the laws of the State of Delaware with its principal office located at 383 Madison Avenue, New York, New York; and (ii) BS&Co. was the placement agent to the EL Master Fund.

23.     Deny the allegations contained in paragraph 23, except admit that (i) BSC was a corporation organized under the laws of the State of Delaware with its principal office located at 383 Madison Avenue, New York, New York; (ii) BSC was the parent of BSAM and BS&Co.; and (iii) pursuant to an agreement between BSC and JPMorgan Chase & Co. ("JPMC"), dated March 16, 2008, a merger subsidiary of JPMC was formed to merge with and into BSC.

24.     Paragraph 24 sets forth a defined term as to which no response is required.

25.     Deny the allegations contained paragraph 25, except admit that Mr. Cioffi joined Bear Stearns in 1985, was a Director of BSAM, acted as Senior Portfolio Manager of the EL Fund and the EL Master Fund, left BSAM's employ on or about November 28, 2007, and, upon information and belief, is a resident of New Jersey, and further refer to the Preliminary Confidential Private Placement Memorandum for Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage Fund, L.P., dated June 30, 2006 (the "PPM"), the Subscription Agreements for the Partnership, and LPA (collectively, the "Offering Materials") for their complete terms and contents.

26.     Deny the allegations contained in paragraph 26, except admit, upon information and belief, that Mr. McGarrigal is a resident of New York, and further admit that at times he was a Managing Director at BSAM, and that he acted as a portfolio manager for the EL Fund and the EL Master Fund.

27.     Deny the allegations contained in paragraph 27, except admit that Mr. Tannin is a resident of New York, that he was a Senior Managing Director at BSAM, and that he acted as Chief Operating Officer of the EL Fund and the EL Master Fund.

28.     Paragraph 28 sets forth a defined term as to which no response is required.

29.     Deny the allegations contained in paragraph 29, except deny knowledge or information sufficient to form a belief as to the location of the principal office of Walkers Fund Services Limited ("Walkers") and as to the services it provides to its clients, and admit that Walkers is a Cayman Islands company that provided certain services to the EL Master Fund.

30.     Deny the allegations contained in paragraph 30, except deny knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the first sentence or this paragraph, and admit that in or about August 2006, Mr. Lennon became an independent director of the EL Master Fund and that his responsibilities included evaluating certain transactions.

31.     Deny the allegations contained in paragraph 31, except deny knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the first sentence of this paragraph, and admit that in or about August 2006, Ms. Wilson-Clarke became an independent director on the EL Master Fund and that her responsibilities included evaluating certain transactions.

32.     Paragraph 32 sets forth defined terms as to which no response is required.

33.     Deny the allegations contained paragraph 33, except admit that the EL Fund was formed as a Delaware limited partnership on or about June 9, 2006, that limited partnership interests in the EL Fund were offered through the PPM and were private offerings pursuant to exemptions provided by Section 4(2) of the Securities Act of 1933, Rule 506, and applicable state securities laws, that BSAM was the General Partner of the EL Fund, and that investors in the EL Fund entered into subscription agreements.

34.     Deny the allegations contained in paragraph 34, except admit that the HG Fund and the HG Overseas Fund were created in or about October 2003 and that these funds served as feeder funds for the HG Master Fund.

35.     Deny the allegations contained in paragraph 35, except deny knowledge and information sufficient to form a belief as to the truth or accuracy of the allegations contained in the first sentence and refer to the preliminary performance profiles (the "PPPs") for August 2006 and January 2007 for their complete terms and contents.

36.     Deny the allegations contained in paragraph 36, except admit that the EL Fund and the EL Overseas Fund were feeder funds to the EL Master Fund.

37.     Deny the allegations contained in paragraph 37, except refer to the Offering Materials for their complete terms and contents.

38.     Deny the allegations contained in paragraph 38, except refer to the Offering Materials, the Confidential Private Placement Memorandum for the HG Fund, and the Bear Stearns High-Grade Structured Credit Strategies, L.P. Amended and Restated Limited Partnership Agreement for their complete terms and contents.

39.     Deny the allegations contained in paragraph 39, except admit that Barclays provided leverage to the EL Fund and refer to the PPM for its complete terms and contents.

40.     Deny the allegations contained in paragraph 40, except refer to the PPM and the letter agreement between the Partnership and Barclays Bank PLC, dated August 1, 2006, including all annexes to that agreement (the "Barclays Domestic Swap Agreement"), for their complete terms and contents.

41.     Deny the allegations contained in paragraph 41, except refer to the PPM and the Barclays Domestic Swap Agreement for their complete terms and contents.

42.     Deny the allegations contained in paragraph 42, except refer to the PPM for its complete terms and contents.

43.     Deny the allegations contained in paragraph 43, except refer to the PPM for its complete terms and contents.

44.     Deny the allegations contained in paragraph 44, except refer to the PPM for its complete terms and contents.

45.     Deny the allegations contained in paragraph 45, except refer to the PPM and the Barclays Domestic Swap Agreement for their complete terms and contents.

46.     Deny the allegations contained in paragraph 46, except refer to the PPM for its complete terms and contents.

47.     Deny the allegations contained in paragraph 47, except refer to the PPM for its complete terms and contents.

48.     Deny the allegations contained in paragraph 48, except refer to the PPM for its complete terms and contents.

49.     Deny the allegations contained in paragraph 49, except refer to the PPM for its complete terms and contents.

50.     Deny the allegations contained in paragraph 50, except refer to the PPM for its complete terms and contents.

51.     Deny the allegations contained in paragraph 51, except refer to the PPM for its complete terms and contents.

52.     Deny the allegations contained in paragraph 52, except refer to the PPM for its complete terms and contents.

53.     Deny the allegations contained in paragraph 53, except refer to the PPM for its complete terms and contents.

54.     Deny the allegations contained in paragraph 54, except refer to the PPM for its complete terms and contents.

55.     Deny the allegations contained in paragraph 55, except refer to the PPM for its complete terms and contents.

56.     Deny the allegations contained in paragraph 56, except refer to the PPM for its complete terms and contents.

57.     Deny the allegations contained in paragraph 57, except refer to the PPM for its complete terms and contents.

58.     Deny the allegations contained in paragraph 58, except admit that, at times, the Partnership paid the General Partner an advisory fee and a profit share in accordance with the terms of the Offering Materials.  To the extent the allegations contained in paragraph 58 purport to quote or describe the PPM, refer to the PPM for its complete terms and contents, and also refer to the Offering Materials for their complete terms and contents.

59.     Deny the allegations contained in paragraph 59, except refer to the PPM for its complete terms and contents.

60.     Deny the allegations contained in paragraph 60, except refer to the PPM for its complete terms and contents.

61.     Deny the allegations contained in paragraph 61, except refer to the Offering Materials for their complete terms and contents.

62.     Deny the allegations contained in paragraph 62, except refer to the Offering Materials for their complete terms and contents.

63.     Deny the allegations contained in paragraph 63, except refer to the Offering Materials for their complete terms and contents.

64.     Deny the allegations contained in paragraph 64, except refer to the PPM for its complete terms and contents.

65.     Deny the allegations contained in paragraph 65, except refer to the PPM for its complete terms and contents.

66.     Deny the allegations contained in paragraph 66, except admit that "mark-to-market" is an accounting method that may be used to assign a value to certain types of assets under certain circumstances and refer to the PPM for its complete terms and contents.

67.     Deny the allegations contained in paragraph 67, except refer to the PPM for its complete terms and contents.

68.     Deny the allegations contained in paragraph 68, except refer to the PPM for its complete terms and contents.

69.     Deny the allegations contained in paragraph 69, except refer to the PPM for its complete terms and contents.

70.     Deny the allegations contained in paragraph 70 and further state that to the extent this paragraph contains legal assertions, no response is required.

71.     Deny knowledge or information sufficient to form a belief as to the truth or accuracy or accuracy of the allegations contained in paragraph 71, except refer to the PPM for its complete terms and contents.

72.     Deny the allegations contained in paragraph 72.

73.     Deny the allegations contained in paragraph 73, except admit that on September 18, 2006, Mr. Tannin sent an email to Mr. Cioffi and others that contained, in part, the quoted language, but refer to that email for its complete contents, deny all negative inferences and implications regarding the meaning of those words or that message, and further state that the quotes from the email cannot properly be understood without reference to the rest of the email and the larger context.

74.     Deny the allegations contained in paragraph 74, except admit the allegations contained in the first sentence.

75.     Deny the allegations contained in paragraph 75, except refer to the LPA for its complete terms and contents, and further state that to the extent that this paragraph contains legal assertions, no response is required.

76.     Deny the allegations contained in paragraph 76.

77.     Deny the allegations contained in paragraph 77.

78.     Deny the allegations contained in paragraph 78, except admit that on September 17, 2006, Mr. Cioffi sent Mr. Tannin an email that contained, in part, the quoted language, but refer to that email for its complete contents, deny all negative inferences and implications regarding the meaning of those words or that message, and further state that the quotes from the email cannot properly be understood without reference to the rest of the email and the larger context.

79.     Deny the allegations contained in paragraph 79, except admit that the EL Fund received subscriptions from a percentage of Limited Partners in the HG Fund and that certain assets were transferred from the HG Master Fund to the EL Master Fund.

80.     Deny the allegations contained in paragraph 80, except refer to the PPM for its complete terms and contents.

81.     Deny the allegations contained in paragraph 81, except refer to the Massachusetts Complaint for a statement of its allegations.

82.     Deny the allegations contained in paragraph 82.

83.     Deny the allegations contained in paragraph 83.

84.     Deny the allegations contained in paragraph 84.

85.     Deny the allegations contained in paragraph 85.

86.     Deny the allegations contained in paragraph 86.

87.     Deny the allegations contained in paragraph 87, except refer to the PPM for its complete terms and contents, and refer to the Massachusetts Complaint for a statement of its allegations.

88.     Deny the allegations contained in paragraph 88, and refer to the Offering Materials for their complete terms and contents.

89.     Deny the allegations contained in paragraph 89.

90.     Deny the allegations contained in paragraph 90.

91.     Deny the allegations contained in paragraph 91.

92.     Deny the allegations contained in paragraph 92, except refer to the PPM for its complete terms and contents.

93.     Deny the allegations contained in paragraph 93, except admit Lennon and Wilson-Clarke were listed in the PPM as directors of the Master Fund.

94.     Deny knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 94, except admit that at times Lennon and Wilson-Clarke were affiliated with Walkers FS.

95.     Deny the allegations contained in paragraph 95, except admit, upon information and belief, that Walkers provided director and trustee services to at least nine BSAM hedge funds and that Walkers provided directors to the Master Fund.

96.     Deny the allegations contained in paragraph 96, except admit, upon information and belief, that Walkers provides certain services to hedge funds and is aware of the existence and contents of Section 206(3) of the Investment Advisors Act, and state that to the extent the allegations in this paragraph contain conclusions of law, no response is required.

97.     Deny the allegations contained in paragraph 97.

98.     Deny the allegations contained in paragraph 98.

99.     Deny the allegations contained in paragraph 99.

100.    Deny the allegations contained in paragraph 100, except admit that at times Bear Stearns entities engaged in transactions with the EL Master Fund.

101.    Deny the allegations contained in paragraph 101.

102.    Deny the allegations contained in paragraph 102, except admit that as disclosed in the Offering Materials, the EL Master Fund was permitted to invest in securities structured by affiliates of the General Partner and refer to the Offering Materials for their complete terms and contents.  To the extent paragraph 102 purports to state a legal conclusion, no response is required.

103.     Deny the allegations contained in paragraph 103.

104.     Deny the allegations contained in paragraph 104.  To the extent paragraph 104 purports to state a legal conclusion, no response is required.

105.     Deny the allegations contained in paragraph 105, except refer to the PPM for its complete terms and contents, and deny knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations concerning Walkers' knowledge of its responsibilities or of Walkers' knowledge of the contents of the PPM.

106.     Deny the allegations contained in paragraph 106, except deny knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations concerning Walkers' state of mind and/or the state of mind of investors.

107.     Deny the allegations contained in paragraph 107, except admit that Walkers was compensated for services it rendered to the EL Fund and to the EL Master Fund.

108.     Deny the allegations contained in paragraph 108, except admit that the referenced article was published in the *Wall Street Journal*.

109.     Deny the allegations contained in paragraph 109, except admit that the referenced article was published in the *BusinessWeek*.

110.     Deny the allegations contained in paragraph 110, except admit that the referenced article was published in the *BusinessWeek*.

111.     Deny the allegations contained in paragraph 111, except admit that the referenced article was published in the *Wall Street Journal*.

112.     Deny the allegations contained in paragraph 112, except refer to any accurate audio recording of the referenced call for its complete contents and further state that any excerpt

from that call cannot properly be understood without reference to the rest of the call or the larger context.

113.    Deny the allegations contained in paragraph 113, except refer to any accurate audio recording of the referenced call for its complete contents, and further state that any excerpt from that call cannot properly be understood without reference to the rest of the call or the larger context.

114.    Deny the allegations contained in paragraph 114, except refer to any accurate audio recording of the referenced call for its complete contents, and further state that any excerpt from that call cannot properly be understood without reference to the rest of the call or the larger context.

115.    Deny the allegations contained in paragraph 115, except refer to any accurate audio recording of the referenced call for its complete contents, and further state that any excerpt from that call cannot properly be understood without reference to the rest of the call or the larger context.

116.    Deny the allegations contained in paragraph 116.

117.    Deny the allegations contained in paragraph 117, except (i) admit that the referenced article was published in the *Wall Street Journal*, (ii) admit that Mr. Cioffi and Mr. Tannin were indicted by a federal grand jury, (iii) admit that the SEC filed a civil complaint against Mr. Cioffi and Mr. Tannin on or about June 19, 2008, and refer to the Indictment and the SEC Complaint for a statement of their allegations, and further state that on November 10, 2009, following a fifteen-day trial on the criminal charges, Mr. Cioffi and Mr. Tannin were acquitted of all charges submitted to the jury in *United States v. Cioffi and Tannin*, No. CR-08-415.

118.     Deny the allegations contained in paragraph 118, except (i) admit that Mr. Cioffi and Mr. Tannin were indicted by a federal grand jury, (ii) refer to the Indictment for a statement of its allegations, and (iii) state that on November 10, 2009, following a fifteen-day trial on the criminal charges, Mr. Cioffi and Mr. Tannin were acquitted of all charges submitted to the jury in *United States v. Cioffi and Tannin*, No. CR-08-415.

119.     Deny the allegations contained in paragraph 119, except refer to the March 2007 PPP for its complete terms and contents.

120.     Deny the allegations contained in paragraph 120, and refer to a June 8, 2007 Letter to Investors for its contents.

121.     Deny the allegations contained in paragraph 121, except admit that the referenced article was published in the *Wall Street Journal* and refer to a June 7, 2007 Letter to Investors for its contents.

122.     Deny the allegations contained in paragraph 122, except admit that the referenced article was published in *BusinessWeek*, and refer to the Offering Materials for their complete terms and contents.

123     Deny the allegations contained in paragraph 123.

124.     Deny the allegations contained in paragraph 124, except admit that BSC publicly announced on June 22, 2007 that it intended to provide up to $3.2 billion in financing to the HG Master Fund and refer to the June 22, 2007 press release for its complete contents, and admit that certain repo counterparties exercised their rights under their respective repo agreements to terminate the financing and retain ownership of the pledged collateral.

125.     Deny the allegations contained in paragraph 125, and refer to referenced letter for its complete contents.

126.     Deny the allegations contained in paragraph 126.

127.     Deny the allegations contained in paragraph 127, except admit that the Master Funds filed for bankruptcy protection on or about August 1, 2007.

128.     Deny the allegations contained in paragraph 128, except admit that the referenced article was published in the *Wall Street Journal*.

129.     Deny the allegations contained in paragraph 129, except admit that the referenced article was published in the Wall Street Journal.

130.     Deny the allegations contained in paragraph 130, except admit that plaintiff purports to assert certain of its claims derivatively on behalf of the Partnership.

131.     Deny the allegations contained in paragraph 131.

132.     Deny the allegations contained in paragraph 132, except deny knowledge and information sufficient to form a belief as to the truth or accuracy of the allegations concerning FIC.

133.     Deny knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in paragraph 133.

134.     Deny the allegations contained in paragraph 134, except admit that BSAM was the General Partner of the Partnership and that plaintiff did not make a pre-suit demand.

## As to Count I

135.     Mr. Tannin repeats and realleges his responses in each of the preceding paragraphs.

136.     The allegations contained in paragraph 136 constitute a legal conclusion as to which no response is required.

137.     Deny the allegations contained in paragraph 137.

138.    Deny the allegations contained in paragraph 138.

139.    Deny the allegations contained in paragraph 139, except admit that plaintiff did not make a pre-suit demand.

## As to Count II

140.    Mr. Tannin repeats and realleges his responses in each of the preceding paragraphs.

141.    The allegations contained in paragraph 141 constitute a legal conclusion as to which no response is required.

142.    Deny the allegations contained in paragraph 142.

143.    Deny the allegations contained in paragraph 143.

144.    Deny the allegations contained in paragraph 144.

## As to Count III

145.    Mr. Tannin repeats and realleges his responses in each of the preceding paragraphs.

146.    Deny the allegations contained in paragraph 146, except deny knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations concerning the Walkers Defendants' knowledge about the Management Defendants' duties, and state that to the extent this paragraph purports to asset legal conclusions, no response is required.

147.    Deny the allegations contained in paragraph 147.  To the extent this paragraph purports to assert a legal conclusion, no response is required.

148.    Deny the allegations contained in paragraph 148.  To the extent this paragraph purports to assert a legal conclusion, no response is required.

149.    Deny the allegations contained in paragraph 149.  To the extent this paragraph purports to assert a legal conclusion, no response is required.

150.    Deny the allegations contained in paragraph 150.

151.    Deny the allegations contained in paragraph 151.

152.    Deny the allegations contained in paragraph 152.

153.    Deny the allegations contained in paragraph 153.

<u>As to Count IV</u>

154.    Mr. Tannin repeats and realleges his responses in each of the preceding paragraphs.

155.    Deny the allegations contained in paragraph 155, except refer to the PPM for its complete terms and contents, and state that to the extent this paragraph purports to assert legal conclusions, no response is required.

156.    Deny the allegations contained in paragraph 156.

157.    Deny the allegations contained in paragraph 157.

**DEFENSES**

**First Affirmative Defense**

The Second Amended Complaint fails to state a cause of action against Mr. Tannin.

**Second Affirmative Defense**

All or part of plaintiff's claims are barred by its failure to make a pre-suit demand or to allege that such demand would have been futile.

**Third Affirmative Defense**

All or part of plaintiff's claims are barred by the exculpatory clauses in the Offering Materials.

## Fourth Affirmative Defense

All or part of plaintiff's claims are preempted by the Martin Act.

## Fifth Affirmative Defense

All or part of plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

## Sixth Affirmative Defense

All or part of plaintiff's claims are barred by the doctrines of waiver and estoppel.

## Seventh Affirmative Defense

The claims are barred, in whole or in part, by the doctrine of acquiescence.

## Eighth Affirmative Defense

Any injury allegedly sustained by plaintiff or the EL Fund was not directly or proximately caused by any conduct or act of Mr. Tannin.

## Ninth Affirmative Defense

Plaintiff has not adequately pleaded reliance (or allegations giving rise to a presumption of reliance) on the alleged misrepresentations cited in the Second Amended Complaint.

## Tenth Affirmative Defense

All or part of plaintiff's claims are barred to the extent they fail to comply with Fed. R. Civ. P. 9(b)'s requirement that fraud-based claims be pleaded with particularity.

## Eleventh Affirmative Defense

The Second Amended Complaint is barred by the terms of the Offering Materials.

## Twelfth Affirmative Defense

To the extent any damages were suffered by the EL Fund, such damages should be offset by amounts owed by the Partnership to Mr. Tannin.

**Thirteenth Affirmative Defense**

All or part of plaintiff's claims are barred because plaintiff has failed to plead any

material misrepresentations or material actionable omissions.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant Matthew M. Tannin respectfully requests that the Court:

1.     Enter judgment in his favor;

2.     Award him attorneys' fees and other costs; and

3.     Award him such other relief as this Court may deem just and proper.


Dated: New York, New York
       February 16, 2010

                                        **BRUNE & RICHARD LLP**

                                        By:   s/ Theresa Trzaskoma
                                              Nina M. Beattie
                                              Theresa Trzaskoma
                                        80 Broad Street
                                        New York, NY 10004
                                        Telephone:  (212) 668-1900
                                        Facsimile:   (212) 668-0315

                                        *Attorneys for Defendant Matthew Tannin*