UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FIC, L.P., individually, and on behalf of all others similarly situated,

Plaintiff,

v.

BEAR STEARNS ASSET MANAGEMENT INC., RALPH CIOFFI, RAYMOND McGARRIGAL, MATTHEW TANNIN, BEAR STEARNS COMPANIES INC., BEAR STEARNS & CO. INC., WALKERS FUND SERVICES LIMITED, SCOTT LENNON, and MICHELLE WILSON-CLARKE,

Defendants,

and

BEAR STEARNS HIGH-GRADE STRUCTURED CREDIT STRATEGIES ENHANCED LEVERAGE FUND, L.P.,

Nominal Defendant.

No. 07 Civ. 11633 (AKH)

ECF Case

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO THE OBJECTORS' BRIEF IN OPPOSITION TO FINAL APPROVAL OF THE PROPOSED SETTLEMENT**

**GRANT & EISENHOFER P.A.**
Jay W. Eisenhofer
James J. Sabella
485 Lexington Avenue, 29th Floor
New York, New York 10017
Tel: 646-722-8500
Fax: 646-722-8501

**GARDY & NOTIS, LLP**
Mark C. Gardy
James S. Notis
501 Fifth Avenue, 14th Floor
New York, New York 10017
Tel: 212-905-0509
Fax: 212-905-0508

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

I. THE PROPOSED SETTLEMENT IS NOT "UNREASONABLY LOW" ..... 3

A. OBJECTORS' ARGUMENT CONCERNING THE MAXIMUM POTENTIAL RECOVERY DOES NOT PROVE THAT THE PROPOSED SETTLEMENT IS UNREASONABLE ..... 5

B. THE FINDINGS AND ALLEGED ADMISSIONS IN OTHER PROCEEDINGS DO NOT PROVE THAT THE PROPOSED SETTLEMENT IS UNREASONABLE ..... 8

C. DEFENDANTS' SETTLEMENT OF RELATED PROCEEDINGS DO NOT PROVE THAT THE PROPOSED SETTLEMENT IS UNREASONABLE ..... 8

D. OBJECTORS' DISCUSSION OF DEFENDANTS' DEFENSES DOES NOT PROVE THAT THE PROPOSED SETTLEMENT IS UNREASONABLE ..... 11

II. THE EXTENT OF THE OPPOSITION TO THE SETTLEMENT DOES NOT PRECLUDE APPROVAL THEREOF ..... 11

A. OBJECTORS OVERSTATE THE PROPORTION OF THE PARTNERSHIP INTERESTS THEY REPRESENT, AND A SETTLEMENT CAN BE APPROVED NOTWITHSTANDING SUCH OPPOSITION ..... 11

B. THERE IS NO DUE PROCESS ISSUE HERE ..... 12

C. OBJECTORS' RELIANCE ON THE PROVISION IN THE LIMITED PARTNERSHIP AGREEMENT REGARDING REMOVING THE GENERAL PARTNER IS MISPLACED ..... 14

CONCLUSION ..... 14

# TABLE OF AUTHORITIES

Page

Cases

*In re "Agent Orange" Prod. Liab. Litig.*,
818 F.2d 179 (2d Cir. 1987)....................12

*In re Bernard L. Madoff Inv. Sec. LLC*,
654 F.3d 229 (2d Cir. 2011)....................7, 8

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)....................4, 6, 8

*DeLeo v. Swirsky*,
No. 00-cv-6917, 2002 U.S. Dist. LEXIS 8493 (N.D. Ill. May 13, 2002)....................13

*In re Estate of Rothko*,
43 N.Y.2d 305, 401 N.Y.S.2d 449 (1977)....................7

*Fisher v. First Stamford Bank & Trust Co.*,
751 F.2d 519 (2d Cir. 1984)....................9

*Gentile v. Rossette*,
No. 20213-VCN, 2010 Del. Ch. LEXIS 190 (Del. Ch. Sept. 10, 2010)....................6

*Gottlieb v. Wiles*,
11 F.3d 1004 (10th Cir. 1993)....................1, 13

*In re Joint E. & S. Dist. Asbestos Litig.*,
129 B.R. 710 (E.D.N.Y. 1991)....................12

*In re Lloyd's Am. Trust Fund Litig.*,
No. 96-cv-1262, 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002)....................3, 12

*Mizrahi v. Chanel, Inc.*,
193 Misc. 2d 1, 746 N.Y.S.2d 878 (Sup. Ct. N.Y. Co. 2001)....................5

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972)....................2

*TBK Partners, Ltd. v. Western Union Corp.*,
675 F.2d 456 (2d Cir. 1982)....................3, 12, 13

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008)....................2, 4

*Thompson v. Metropolitan Life Ins. Co.*,
216 F.R.D. 55 (S.D.N.Y. 2003) ....................3

*Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*,
241 F.R.D. 451 (S.D.N.Y. 2007) ....................5

*Transamerica Mortgage Advisors, Inc. v. Lewis*,
444 U.S. 11 (1979)....................9

*Trump v. Cheng*,
No. 602877/05, 2005 WL 2738344 (Sup. Ct. N.Y. Co. Sept. 14, 2005) ....................5

*Walton v. Morgan Stanley & Co.*,
623 F.2d 796 (2d Cir. 1980)....................5

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982)....................4

*Young v. Katz*,
447 F.2d 431 (5th Cir. 1971) ....................4

Statutes and Rules

Fed. R. Civ. P. 23(b)(1)....................13

Plaintiff FIC, L.P. ("Plaintiff" or "FIC") respectfully submits this reply memorandum in further support of its motion for final approval of the proposed settlement of this derivative Action and an award of attorneys' fees and expenses to Plaintiff's counsel, and in response to the memorandum of law filed by certain Objectors to the settlement.[1]

## PRELIMINARY STATEMENT

In accordance with the Court's February 8, 2012 Preliminary Approval Order (Dkt. No. 101), Plaintiff's counsel transmitted copies of the Notice and Proof of Claim form to all of the Eligible Investors. Every Eligible Investor has submitted a Proof of Claim, and none have objected except for the entities that had objected to preliminary approval of the settlement.

The Objectors[2] – each of whom obtained its limited partnership interest in the U.S. Enhanced Leverage Fund by virtue of assignment from Ozcar Multi-Strategies LLC after this case was commenced, and all of whom are represented by the same counsel – object to the proposed settlement of this derivative action. While they seek to clothe their objection in constitutional garb, arguing that it would violate due process to approve the settlement without allowing opt outs, their argument ignores several facts that eviscerate that argument. First, this is a derivative case, not a class action, and "there is no opt-out provision in shareholder derivative suits." *Gottlieb v. Wiles*, 11 F.3d 1004, 1011 (10th Cir. 1993). Second, the settlement here provides a mechanism whereby an investor could have retained all of its individual rights notwithstanding Court approval of the settlement: all an investor needed to do to retain its individual right to sue defendants was to decline to submit the proof of claim and release.

---

[1] Abbreviations are used herein as defined in Plaintiff's Memorandum of Law in Support of Motion for Final Approval of Settlement and an Award of Attorneys' Fees and Expenses ("Pl. Br.") (Dkt. No. 110).

[2] Edison Fund Limited, Seattle Fund SPC – Segregated Portfolio B, Essex Fund Limited, and Feel Good Investment Fund Ltd. ("Objectors"). The memorandum of law submitted by the Objectors (Dkt. No. 112) is cited herein as "Obj. Br."

Objectors here, however, chose not to follow that route and instead signed and submitted the proof of claim and release, thereby choosing to relinquish their individual claims and take their share of the settlement proceeds if the Court approves the settlement. There is no due process violation.

Objectors' assertions as to the strength of or potential recovery on Plaintiff's claims are similarly unpersuasive. A motion for settlement approval is not the occasion for a "mini-trial" as to the merits of the case. *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008). Whether the proposed settlement represents 21% as opposed to 33% of the maximum potential recovery is essentially irrelevant. What matters is whether the settlement is within the "range of reasonableness" for a complex derivative case such as this, *see Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972), and clearly percentages such as these are.

Nor should the Court be misled by the Objectors' continual assertions that the Court must not approve the proposed settlement because it "is opposed by over 85% of the partnership interests in" the U.S. Enhanced Leverage Fund. Obj. Br. at 1; *see id.* at 34 ("Objectors represent[] over 85% of the limited partners' interests"). While Objectors may constitute 85% of the remaining Eligible Investors that have not previously settled with Defendants, Objectors represent only approximately 22% of the total investor interests in the Fund.[3] Objectors also overlook that a large proportion of the investors previously settled for recoveries at or below the 33% that the proposed settlement provides.[4] In fact, of the 55 investors in the Fund who either

[3] See Defendants' Memorandum of Law in Response to the Objection to Final Approval of the Proposed Settlement, dated March 23, 2012 ("Def. Br.") at 3.

[4] As proposed, the settlement would return to investors an amount calculated as 30% of their net contribution plus 8% of the reported gains they made in the U.S. High-Grade Fund that were rolled over into the U.S. Enhanced Leverage Fund – which amount in total to approximately 33% of the net contributions.

have settled or indicated a willingness to do so if the proposed settlement is approved, 41 – nearly 75% – settled at or below 33.3%, and the settlements average 33% of net contributions Def. Br. at 4 & n.4. In any event, even "majority opposition to a settlement cannot serve as an automatic bar to a settlement that a district judge … determines to be manifestly reasonable." *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 462 (2d Cir. 1982).

Objectors do not challenge a number of the points made in Plaintiff's initial brief: They do not challenge that public policy favors the settlement of disputes, Pl. Br. at 6; they do no challenge that there is a presumption in favor of the fairness of the settlement, Pl. Br. at 6-7; and they do not challenge the adequacy of notice, Pl. Br. at 32. Moreover, Objectors do not challenge the appropriateness of the request by Plaintiff's counsel for an award of $3.5 million for attorneys' fees and expenses, assuming the settlement is approved by the Court, Pl. Br. at 22-32. As none of these aspects are challenged by Objectors, Plaintiff will not address them further herein and will focus only on the arguments that Objectors raise in their brief.

## I. THE PROPOSED SETTLEMENT IS NOT "UNREASONABLY LOW"

Much of the Objection is based on an assumption that Defendants will be held liable at trial and on appeal – an assumption that courts have repeatedly rejected as a basis for refusing to approve a settlement. *See Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 66 (S.D.N.Y. 2003) (Objectors "wrongly assume [Defendants'] guilt would be proven at trial. Such assumption cannot stand as a proper basis to evaluate the proposed settlement's fairness."); *see also In re Lloyd's Am. Trust Fund Litig.*, No. 96-cv-1262, 2002 U.S. Dist. LEXIS 22663, at *56 (S.D.N.Y. Nov. 26, 2002) (objections based on "the hope that recovery ... would recoup all the market losses ... improperly assume that Plaintiffs' alleged losses and damages have already been proven").

Objectors' arguments concerning the strengths and weaknesses of the claims and defenses herein attempt to engage the Court in a mini-trial on the merits of the case. This is precisely what the Second Circuit has instructed that courts should not do on a motion to approve a settlement. In *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974), the Second Circuit cited with approval the following passage from *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971):

> It is not necessary in order to determine whether an agreement of settlement and compromise shall be approved that the court try the case which is before it for settlement …. Such procedure would emasculate the very purpose for which settlements are made. The court is only called upon to consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and exercise of business judgment in determining whether the proposed settlement is reasonable

*See also Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982) (rejecting the notion that "in order to avoid a trial, the judge must in effect conduct one"); *Telik*, 576 F. Supp. 2d at 576 (on a motion to approve a settlement the court should not "conduct a 'mini-trial'").

This is, of course, not the first occasion that this Court has had to evaluate the reasonableness of a settlement in this range with respect to the claims asserted in this case. In the *Navigator* case involving the U.S. High-Grade Fund, which involved many of the same or highly similar facts and circumstances as the case here, this Court has already considered the strengths and weaknesses of the claims and defenses and concluded that a settlement returning to investors 30% of their net contributions is fair and reasonable. *See Navigator Capital Partners, L.P. v. Bear Stearns Asset Management Inc.*, No. 07-cv-7783, Dkt. No. 139 ¶ 2 (S.D.N.Y. Nov. 2, 2011). Objectors nowhere explain how disapproval of the settlement in this case could possibly be reconciled with approval of the *Navigator* settlement.

Taking into account the policy in favor of settlement and the presumption of fairness that this settlement enjoys, consideration of the nature of the claims and the possible defenses demonstrates that the settlement is well within the range of reasonableness and should be approved.

### A. OBJECTORS' ARGUMENT CONCERNING THE MAXIMUM POTENTIAL RECOVERY DOES NOT PROVE THAT THE PROPOSED SETTLEMENT IS UNREASONABLE

The proposed settlement would return to investors approximately 33% of their net contribution in the Fund. Objectors argue that the investors could recover more than their net contribution, so that the proposed settlement is actually a smaller percentage. Objectors' argument does not prove that the proposed settlement is unreasonable.

First, Objectors argue that if Plaintiff prevails on the breach of fiduciary duty claims, prejudgment interest at the rate of 9% would be mandatory under New York law. Adding such interest to the net contributions and rollover amounts, Objectors estimate that the proposed settlement amounts to only 21% of the maximum potential recovery. Obj. Br. at 9-10. However, Objectors are incorrect in asserting that New York's rules on prejudgment interest would apply here. "In a diversity case, prejudgment interest is controlled by the rule of the jurisdiction whose law determines liability." *Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*, 241 F.R.D. 451, 456-57 (S.D.N.Y. 2007) (quoting *Aniero Concrete Co. v. New York City Constr. Auth.*, 308 F. Supp. 2d 164, 211 (S.D.N.Y. 2003)). As the Fund is a Delaware limited partnership, Delaware law supplies the law determining whether there was a breach of fiduciary duty. *See Walton v. Morgan Stanley & Co.*, 623 F.2d 796, 798 n.3 (2d Cir. 1980); *Trump v. Cheng*, No. 602877/05, 2005 WL 2738344, at *4 (Sup. Ct. N.Y. Co. Sept. 14, 2005); *Mizrahi v. Chanel, Inc.*, 193 Misc. 2d 1, 4, 746 N.Y.S.2d 878, 881 (Sup. Ct. N.Y. Co. 2001). Under Delaware law, "a court of equity has broad discretion, subject to principles of fairness, in fixing the rate [of prejudgment

interest] to be applied." *Gentile v. Rossette*, No. 20213-VCN, 2010 Del. Ch. LEXIS 190, at *4 (Del. Ch. Sept. 10, 2010) (quotations omitted).

Even if Objectors' analysis of the interest issue were correct, it hardly proves that the proposed settlement is unreasonable. As the Court is aware, and as the cases cited in Plaintiff's initial brief demonstrate, settlements well below 21% of the maximum potential recovery are routinely found to be fair and reasonable. *See* Pl. Br. at 20-21.

Second, Objectors argue that Plaintiff might recover damages based on the net equity values set forth in the Fund's financial statements, prior to its collapse. Obj. Br. at 10. While Objectors cite *Grinnell* for the notion that the Court should consider the "best possible recovery," 495 F.2d at 463, surely this does not mean that a settlement should be evaluated by reference to recoveries that would be fanciful or preposterous. Indeed, obviously cognizant that the potential for recovery must be meaningful, Objectors assert that there is a "significant possibility" of recovery based on financial statement valuations. Obj. Br. at 10. In fact, there is virtually no chance of such a recovery.

The Complaint alleges that the NAV of the fund was "greatly inflated" and unreliable. Second Amended Verified Derivative Complaint ("Compl.") ¶ 90. For example, it alleges that "there was no market for approximately 63% of the Master Fund's assets" and that defendants assigned marks to those assets that were "intentionally inflate[d]." *Id*. ¶¶ 68, 88. It further alleges that Defendants used the funds as a dumping ground for assets that other Bear entities did not want – assets it claims should never have been purchased and included on the funds books – and that those assets were purchased at inflated prices. *Id*. ¶¶ 7, 10. If Plaintiff were to succeed on these theories, it would prevail in showing that the December 31, 2006 NAV relied upon in

the Objectors' brief is erroneous, and thus improper as a measure of damages. If it does not succeed, Plaintiff's claim would fail and there would be no damages recovered at all.[5]

In support of their argument that damages should be based on the values in the last financial statements, Objectors rely on *In re Estate of Rothko*, 43 N.Y.2d 305, 401 N.Y.S.2d 449 (1977), and its progeny (Obj. Br. at 13-14), where the courts awarded "appreciation damages." Defendants undoubtedly would argue that those cases are plainly inapposite. In *Rothko*, for example, the paintings that were the subject of self-dealing had risen in value by the time of the trial, and the court awarded damages based on their current value. The assets had real value, and had really appreciated. Here, by contrast, the assets now have little if any value, and the theory of the case is that they were always grossly overvalued and were never worth what the Defendants claimed they were worth.

In their brief in opposition to Plaintiff's motion for preliminary approval of the settlement, Objectors had relied heavily on *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d Cir. 2011), for the proposition that damages should be based on financial statement values and not net contributions. *See* Dkt. No. 98 at 10. Now, Objectors' brief in opposition to final approval does not mention *Madoff* at all, and the reason for such omission is clear: To the extent it has any relevance, *Madoff* is supportive of using the net contribution method here. In *Madoff*, the Second Circuit held that it was appropriate for the trustee to base his allocations of available assets on the investors net investments, rather than the values reflected on their account statements. The Court of Appeals agreed with the Bankruptcy Court that the trustee could not

---

[5] In other words, the Objectors cannot have it both ways. They cannot assert, on the one hand, that the Fund's NAVs were artificially inflated (*i.e.*, that the assets held by the Funds were not worth their reported values), while at the same time relying on those purportedly inflated NAVs as the appropriate measure of damages.

"discharge claims upon the false premise that customers' securities positions are what the account statements purport them to be," *id*. at 234, and concluded that '[u]se of the Last Statement Method in this case would have the absurd effect of treating fictitious and arbitrarily assigned paper profits as real." *Id*. at 235. This is analogous to the situation at bar, where, as noted above, the theory of the case is that the financial statement valuations of the Fund's assets were inflated and illusory.

In any event, even if damages could be based on the financial statement values, Objectors calculate that the proposed settlement would amount to about 16% of those values, *see* Obj. Br. at 10 – an amount that is still well within the range that courts routinely approve for securities and derivative cases.

As the Second Circuit stated in *Grinnell*, 495 F.2d at 455, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 455 n.2. Objectors' arguments concerning the percentage of the maximum potential recovery that the proposed settlement represents do not prove that the settlement is unreasonable.

### B. THE FINDINGS AND ALLEGED ADMISSIONS IN OTHER PROCEEDINGS DO NOT PROVE THAT THE PROPOSED SETTLEMENT IS UNREASONABLE

To avoid unnecessary repetition, Plaintiff respectfully refers the Court to the discussion of this issue set forth in Def. Br. at 13-17.

### C. DEFENDANTS' SETTLEMENT OF RELATED PROCEEDINGS DO NOT PROVE THAT THE PROPOSED SETTLEMENT IS UNREASONABLE

As they did in opposing preliminary approval of the settlement, Objectors rely heavily on the results in two other proceedings: the Massachusetts proceeding brought by the Securities

Division of the Office of the Secretary of the Commonwealth, and the Racetrac arbitration. Obj. Br. at 22-23 & n.22. The results do not demonstrate any infirmity in the settlement proposed here.

As discussed in Plaintiff's moving brief, the result in the Massachusetts case is not instructive with respect to the settlement value of this case. First, the Massachusetts regulatory proceeding alleged that Defendants had violated the Investment Advisers Act by not obtaining timely consents by the independent directors with respect to related party transactions between the Fund and other Bear Stearns entities. There is no private right of action under the Investment Advisers Act. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979). Second, the regulator did not have to prove that the failure to obtain consents caused damage; here, causation is a requirement, and it would not be easy to demonstrate because when the independent directors ultimately reviewed the transactions, they approved them. *Fisher v. First Stamford Bank & Trust Co.*, 751 F.2d 519, 522 (2d Cir. 1984) (a board of directors may ratify unauthorized acts). Third, BSAM's willingness to pay to make peace with its regulator was, as is often the case, greater than its willingness to pay to settle private litigation. *See* Pl. Br. at 13, 16-17.

Attempting to rebut these points, Objectors argue that in the Massachusetts case, "BSAM was effectively settling all claims that could be made against it by private investors (who happened to live in Massachusetts and would have had to prove causation to recover)." Obj. Br. at 23. Assuming, *arguendo*, that the Massachusetts case was effectively settling claims by private investors,[6] that does not bolster Objectors' position on this motion. In this derivative

[6] This is not the basis for the Massachusetts complaint. *See* Affirmation of David Barrett (Dkt. No. 112) Attachment 1, Ex. B ¶¶ 239-256.

case, brought on behalf of the Fund, Plaintiff does not and cannot pursue claims by the investors. Such claims can be brought by the investors themselves, but Objectors never pursued such claims. Indeed, such a claim would have continued to be available to Objectors, notwithstanding the Court's approval of the settlement herein, if Objectors had chosen not to file their proof of claim and release here. Thus, even if the Massachusetts settlement were to reflect the strength of a potential misrepresentation claim brought by private investors, that says little about the strength of a derivative claim asserted on behalf of the Fund.

The same is true with respect to the Racetrac arbitration. As discussed in Plaintiff's moving brief, that case involved direct, person-to-person misrepresentations between one investor and certain Bear Stearns employees. Pl. Br. at 15-16. Objectors' brief fails to address this aspect. In this derivative case, brought on behalf of the Fund, there is no claim that the managers of the Fund misled the Fund, *i.e.*, themselves. Thus, even if the Racetrac arbitration demonstrates the settlement value of a claim brought by investors claiming to have been misled, that is not instructive as to the settlement value of the derivative claims here.

Furthermore, Objectors' brief fails to discuss the fact that, as noted in Plaintiff's moving brief, other investors recovered nothing in two other arbitrations. Pl. Br. at 16. This fact further undermines Objectors' reliance on the Racetrac arbitration result.

With respect to *SEC v. Cioffi*, No. 08-cv-2457 (E.D.N.Y.), Objectors assert that the settlement in that case must reflect that the defendants faced a "formidable" case. Obj. Br. at 22. However, as noted in Plaintiff's moving brief, the settlement calls for Cioffi and Tannin to pay $1,050,000, which the judge in that case characterized as "chump change." Pl. Br. at 17-18. Given Objectors' assertion that Cioffi alone received $41 million in compensation in 2005-07, Obj. Br. at 7, that settlement does not suggest that the case was perceived as formidable.

Moreover, in suggesting that the SEC settlement is inadequate, Objectors stress that Bear Stearns misrepresented to investors the extent of the Fund's investment in subprime mortgages. Obj. Br. at 22. As noted above, such a claim might be maintained in a suit by an investor, but not in a derivative suit on behalf of the Fund itself.

### D. OBJECTORS' DISCUSSION OF DEFENDANTS' DEFENSES DOES NOT PROVE THAT THE PROPOSED SETTLEMENT IS UNREASONABLE

To avoid unnecessary repetition, Plaintiff respectfully refers the Court to the discussion of this issue set forth in Def. Br. at 17-22.

## II. THE EXTENT OF THE OPPOSITION TO THE SETTLEMENT DOES NOT PRECLUDE APPROVAL THEREOF

### A. OBJECTORS OVERSTATE THE PROPORTION OF THE PARTNERSHIP INTERESTS THEY REPRESENT, AND A SETTLEMENT CAN BE APPROVED NOTWITHSTANDING SUCH OPPOSITION

On the first page of their brief, Objectors assert that the proposed settlement "is opposed by over 85% of the partnership interests in" the U.S. Enhanced Leverage Fund. Obj. Br. at 1; *see also id*. at 34 ("Objectors represent[] over 85% of the limited partners' interests"). As discussed above, this is not accurate. While Objectors may constitute roughly 85% of the partnership interests that are eligible to participate in the settlement, they do not constitute anywhere near 85% of the Fund's partnership interests. A large number of investors in the Fund have previously entered into settlement agreements with Defendants settling all of their individual claims and assigning to BSAM any further recoveries that they might obtain in this case or any other case. For this reason, they are no longer considered Eligible Investors who can obtain anything from the proceeds of the proposed settlement. The fact is that Objectors comprise about 22% of the partnership interests in the Fund. Def. Br. at 3.

The fact that so many investors representing so many partnership interests previously settled undermines Objectors' argument that a settlement returning 33% of the investors' net

contribution is unsatisfactory to the great majority of the investors. In fact, of the 55 investors in the Fund who either have settled or indicated a willingness to do so if the proposed settlement is approved, 41 – nearly 75% – settled at or below 33.3%, and the settlements average 33% of net contributions  Def. Br. at 4 & n.4.

Thus, Objectors have vastly overstated the percentage of the Fund's partnership interests that believe that a settlement returning 33% of their net contributions is inadequate.

Moreover, the Second Circuit has stated that even "majority opposition to a settlement cannot serve as an automatic bar to a settlement that a district judge … determines is manifestly reasonable." *TBK*, 675 F.2d at 462. This principle has been cited and relied on by numerous decisions in this Circuit. *See In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 179, 182 (2d Cir. 1987); *Lloyd's Am. Trust Fund*, 2002 U.S. Dist. LEXIS 22663, at *66-67; *In re Joint E. & S. Dist. Asbestos Litig.*, 129 B.R. 710, 854 (E.D.N.Y. 1991). Objectors attempt to distinguish *TBK* by arguing that in *TBK* "the level of disapproval was 54%-58%." Obj. Br. at 32 n.25. However, as noted above, 75% of the investors who have been settled or have indicated a willingness to do so settled for 33.3% of their net contributions or less.

### B. THERE IS NO DUE PROCESS ISSUE HERE

There is no merit to Objectors' argument that approval of the settlement over objections would violate due process because there is no opt out provision. Obj. Br. at 28-30.

Objectors argue that because the Fund is in liquidation and there are no creditors, "this is a derivative action in name only" and it is really a "*de facto* class action." Obj. Br. at 28, 30. This Court has taken a contrary view. As the Court will recall, at the argument of the motions to dismiss on February 24, 2009, the Court drew a sharp distinction between the derivative claims and the class claims that had been pleaded in the original complaint. The Court expressed the view that Plaintiff could not pursue both a class claim and a derivative claim and indicated that

one or the other would need to be discontinued. Plaintiff thereafter dropped the class claim. The fact that the parties and the Fund's Liquidators have agreed to distribute the proceeds of the settlement directly to the investors does not convert this derivative case into a class action.

It is settled law that "there is no opt-out provision in shareholder derivative suits. Thus, all shareholders are bound by the outcome regardless of their objections." *Gottlieb*, 11 F.3d at 1011; *see DeLeo v. Swirsky*, No. 00-cv-6917, 2002 U.S. Dist. LEXIS 8493, at *14 (N.D. Ill. May 13, 2002) ("unlike a class suit, shareholders have no ability to opt out of a derivative suit."). Objectors appear to concede this point. Obj. Br. at 33.

Even if this were a class action, which it is not, the absence of an opt out provision would not mean that it would constitute a due process violation to approve a settlement over objections. Class actions certified under Fed. R. Civ. P. 23(b)(1), for example, do not provide for opt outs. In *TBK*, the Second Circuit stated flatly: "[T]he non-opt-out nature of a class does not give a majority-in-interest an absolute veto of any settlement." 675 F.2d at 463 n.7.

In any event, the proposed settlement does provide, in essence, an opt out provision. Objectors could have declined to submit their proof of claim forms and releases, and pursued litigation through the courts or arbitration or otherwise. In that event, even if the settlement is approved by the Court, Objectors would have retained all of their individual rights to prosecute their individual claims, as the petitioner in the Racetrac arbitration did successfully and others investors did unsuccessfully. Objectors, however, elected to sign the release and file the proof of claim, choosing to take their share of the proceeds of this case rather than pursue their individual claims. Due process is not offended by these circumstances.

### C. Objectors' Reliance on the Provision in the Limited Partnership Agreement Regarding Removing the General Partner Is Misplaced

Acknowledging that "a court may approve settlements of derivative actions over the objections of some shareholders and in the absence of opt-out rights," Obj. Br. at 33, Objectors argue that the Court should not abide by such principles because the Fund's Limited Partnership Agreement provides for removal of the Fund's general partner. This convoluted argument does not help Objectors' cause.

Objectors assert that under the Limited Partnership Agreement, a majority vote of the limited partnership interests may remove and replace the general partner – which is currently the Liquidators. This is irrelevant. First, Objectors have not purported to try to exercise that right. The Liquidators are operating as the general partner, and the Liquidators have signed and approved the Settlement Agreement. Second, Objectors do not represent a majority of the limited partnership interests. As discussed above, Objectors hold only approximately 22% of the interests – not nearly enough to remove the general partner.

## CONCLUSION

It is respectfully submitted that the proposed settlement should be approved in all respects.

Furthermore, in light of the fact that the requested award of $3.5 million in attorneys' fees and expenses satisfies both the lodestar analysis and the percentage of recovery analysis and is not challenged by any Eligible Investor, including Objectors, it is respectfully submitted that the requested award should be approved.

Dated: March 23, 2012

**GARDY & NOTIS, LLP**

By: /s/ James S. Notis
Mark C. Gardy
James S. Notis
501 Fifth Avenue, 14th Floor
New York, New York 10017
Tel: 212-905-0509
Fax: 212-905-0508

**GRANT & EISENHOFER P.A.**

By: /s/ James J. Sabella
Jay W. Eisenhofer
James J. Sabella
485 Lexington Avenue, 29th Floor
New York, New York 10017
Tel: 646-722-8500
Fax: 646-722-8501

*Attorneys for Plaintiff*